## Stonebraker v. Gates.

*James S. Woods* and *John M. Snyder*, for plaintiff.

*W. W. Champion, J. A. Rose, Paul G. Smith* and *Chester D. Fetterhoof*, for defendant.

BAILEY, P. J., March 3, 1931.—This is an appeal from the decision of the Workmen's Compensation Board, reversing the decision of the referee who had awarded compensation to the plaintiff, the appellant. The essential facts are these: Fred L. Stone braker, the claimant, was, in October, 1929, a farmer. His brother-in-law, I. W. Wert, owned a farm nearby. The defendant Gates was at that time an itinerant thresher, and his outfit consisted of the machine, a tractor and a platform. This latter device was for the convenience of the farmers whom he served. This threshing machinery was operated by one man, employed by Mr. Gates, and was called a "one-man outfit." The farmer for whom this work was done was required to furnish all necessary labor except that furnished by Mr. Gates's employee, Carper, who had the operation of the machine in his charge. Mr. Wert, following the custom of the community, called his neighbors to assist in the threshing and among them was the plaintiff. On the morning of the accident the platform, the falling of which caused the plaintiff's injuries, was set up by Mr. Wert and his assistants. Just before the accident, Carper was feeding the machine from the platform, while the plaintiff was throwing sheaves to

him from a mow. Carper asked the plaintiff to feed the machine for him while he oiled it. After this work had been done by Carper, the plaintiff again took his place upon the platform, which then collapsed.

It is quite clear from this testimony that the plaintiff was not employed by Mr. Gates or by Carper in the furtherance of the business of the defendant, but whatever he was doing was in the interest of Mr. Wert. There is no evidence whatever to show that Mr. Gates had ever employed the plaintiff. The question here is whether or not this case falls within the doctrine announced in Byrne *v.* Pittsburgh Brewing Co., 259 Pa. 357, where Mr. Justice Stewart, speaking for the court, said: "It is a rule universally recognized that the relation of master and servant cannot be imposed on a person without his consent, express or implied. It is upon the exception to this general rule, which is quite as well settled as the general rule itself, that the plaintiff relies to establish the relation of master and servant, in this case: The exception is that a servant may engage an assistant in the case of an emergency where he is unable to perform the work alone." In an effort to bring this case within the principle just announced, the referee fell into the error of confusing an emergency and a contingency. He used this language: "A certain and definite contingency arose whereby it was necessary for the operator of the machine, Mr. Carper, to oil and grease the machine. He could not continue to feed the machine, or put the sheaves into this self-feeder and oil the machine at the same time; therefore, in order to keep the machine running, he was obliged to have someone do his work, or stop the machine and have operations cease while he oiled the machine, which period, the testimony shows, was about fifteen minutes." A contingency is defined by Webster to be "an event or condition looked forward to as possible or probable, or one dependent upon an uncertain happening;" and in 1 Words and Phrases (2nd series), 958, it is thus defined: "A contingency is some future event which may or may not occur." The essence of a contingency is that it is something to be looked forward to and provided for, but in an emergency this element is entirely absent. This noun is defined by Webster as follows: "An unforeseen occurrence or combination of circumstances which calls for immediate action or remedy." "A sudden or unexpected happening:" 2 Words and Phrases (2nd series), 255. "An emergency is a sudden or unexpected occurrence or condition calling for immediate action:" 3 Words and Phrases (3rd series), 179. An emergency, therefore, is something that Mr. Gates could not foresee. Certainly this could not be said of the necessity for oiling a piece of machinery. There being, therefore, no evidence of emergency, we cannot agree with the conclusion of law arrived at by the referee. It is to be noted that the referee does not find as a fact that the plaintiff was employed by Mr. Gates. There is no evidence from which this could have been found. He was not under the control of Mr. Gates or Mr. Carper, his agent. He was not hired by either or paid by either.

We are not able to see how the right of the plaintiff to compensation can be predicated upon the ground that he was a "loaned" employee. While the referee has found as a fact that Mr. Stonebraker was employed by Mr. Wert, we can find no evidence of that fact in the record. His presence upon the Wert farm was due to a community custom called "neighboring," whereby farmers reciprocally assisted each other in such extra agricultural work as delivering the crop to the thresher. Assuming that he was employed by Mr. Wert, there is no evidence of his loaning the plaintiff to the defendant. In that respect the instant case is clearly distinguishable from Tarr *v.*

Heckla Coal and Coke Co., 265 Pa. 519, Atherhold *v.* Wm. Stoddart Co., 286 Pa. 278, and Lecker *v.* Valentine, 286 Pa. 418.

### *Decree.*

Now, March 3, 1931, the decision of the Workmen's Compensation Board is affirmed, at the cost of the appellant.

From R. W. Williamson, Huntingdon, Pa.